People of the State of Illinois, Plaintiff-Appellee, v. Edward Williamson and Cunningham Purify, De-fendant-Appellant.

Gen. No. 66–90.

Third District.

November 25, 1968.

Harry C. McSteen and George P. Troha, of Joliet, for appellant.

George W. Sangmeister, State's Attorney of Will County, of Joliet, for appellee.

ALLOY, P. J.

This cause is before us on appeal by Edward Williamson from a conviction and sentence following a jury trial on charges of burglary, robbery and rape and by Cunningham Purify for conviction and sentence in the same trial for the crimes of burglary and robbery.

The record in this case discloses that defendant Purify was arrested on November 11, 1965, and jailed for questioning. Defendant Williamson was also arrested and questioned by the police. Both defendants eventually made oral confessions. Defendant Purify made his first confession on November 16, 1965, and he made another confession on November 17, 1965. Defendant Williamson also made an oral confession. The confes-

sions of both Purify and Williamson were tape-recorded by the State's Attorney's office.

Before the trial began, defendant Purify moved to sever the trials of the two defendants because they had each made separate confessions. This motion was denied. Purify, who made the motion, was charged and tried for burglary and robbery only and not for rape. Defendant Williamson did not make a motion to sever. Both defendants, prior to trial, moved that they be furnished with copies of their tape-recorded confessions. This motion was made pursuant to chapter 38, section 114–10 of 1965 Illinois Revised Statutes, which provides as follows:

> "Motion to Produce Confession. (a) On motion of a defendant in any criminal case made prior to trial the court shall order the State to furnish the defendant with a copy of any written confession made to any law enforcement officer of this State or any other State and a list of the witnesses to its making and acknowledgment. If the defendant has made an oral confession a list of the witnesses to its making shall be furnished.
>
> ". . .
>
> "(c) No such confession shall be received in evidence which has not been furnished in compliance with subsection (a) of this Section unless the court is satisfied that the prosecutor was unaware of the existence of such confession prior to trial and that he could not have become aware of such in the exercise of due diligence."

The trial court concluded that the tape-recorded confessions under the record as were made in this cause were not "written confessions" within the scope of the section referred to. The motions were, therefore, denied.

At the trial of both defendants, the actual tape-recorded confessions were never introduced into evidence. The State's Attorney, however, testified as to such oral confessions made by both defendants. Both defendants were given a list of all witnesses present at the oral confessions as required by the Act referred to. The record also discloses that prior to trial, an Assistant State's Attorney offered to play the tape and confession for the defendants and their attorneys, and to allow them to make a recording of them, if defendants would stipulate that this satisfied their motion to produce the tape recording. Both defendants refused this offer and elected to stand on the ruling of the court denying the motion to produce. During the course of the testimony relating to oral confessions of defendant Purify, the State's Attorney made reference to statements of Purify about how "we split the money" and what "they had done." The defendant, Williamson, objected to such plural references and the court instructed the jury to disregard these references to another person, and later required that the State's Attorney restrict his testimony as to the confessions so as to cover "his" activities. The confessions related only to burglary and robbery charges and not to the rape charges.

During the course of the trial, defendant Purify raised some additional questions relating to his confessions. He asserted that he was arrested on November 11, 1965, and was not informed of the charge against him until the following day. He claimed that he requested an attorney and such attorney was appointed on November 19, 1965, but that the attorney was not notified of this appointment until November 24, 1965. He states that he was interrogated from 11 to 13 times by police from November 11 through November 19, and that he made an oral confession on November 16; and another which was tape-recorded on November 17; and still another on November 24, 1965. Defendant Purify

also claims that he was not advised of his right to remain silent and was not allowed to confer with the attorney appointed to defend him. He also asserted that there was a promise of leniency if he would make a confession. Emphasis is placed by such defendant on the contention that he made his confession six days after his arrest and before he was allowed to talk with his attorney. The testimony in behalf of the State in this respect is quite different and tends to show that defendant Purify was taken into court on the day following his arrest and informed of the charges against him and of his right to an attorney. It also discloses that Purify was allowed to telephone for an attorney on the night he was arrested. There is also evidence that Purify requested that his arraignment be continued until he could obtain an attorney of his own, and that when he failed to obtain one he then requested that the court appoint an attorney. The State asserts that this was the reason for the delay.

 The first question for consideration on appeal is whether the trial court erred in refusing to order the State to furnish defendants with a copy of the tape-recorded confessions made by defendants. We do not feel that this constituted reversible error. The tape recordings were not offered in evidence. In lieu thereof evidence of oral confessions was given. It is, therefore, unnecessary for us to determine whether the tape-recorded confessions were in fact "writings" within the meaning of section 114–10 (c 38, 1965 Ill Rev Stats). It is notable that a list of all persons present when confessions were given was furnished to defendants and also that the State in fact offered to permit the defendants to hear the tapes of the confessions and to make their own recordings or copies of such confessions. Defendants refused the State's offer and apparently they decided to rely upon the technical position that the court's denial of the motion would be a basis for error on appeal.

From an examination of the record before us we, therefore, conclude that there was no reversible error in the refusal of the trial court to order the State to furnish defendants with a copy of the tape-recorded confessions.

 Defendant Williamson, on appeal in this Court, seeks to assert that it was error on part of the court to deny the motion made by Purify to sever the trials of Williamson and Purify. Defendant Williamson made no such motion, but is attempting to take advantage of the motion made by Purify although Purify raises no objection on appeal with respect to the ruling on such motion to sever. Williamson's name was mentioned at no time in the confessions of Purify and the jury was instructed to consider statements of Purify as evidence only as against Purify. Defendant Williamson's defense on the record could not have been seriously prejudiced by the procedure in conducting a joint trial of both Williamson and Purify. Since Williamson did not move to sever the trials of the respective parties, however, it is our determination that he cannot now raise this question on appeal.

 The next question raised was whether the contention of defendant Purify that the confessions were not voluntary and should not have been admitted into evidence is sound. The question of whether a confession is voluntary is determined on the basis of the record, and is largely within the discretion of the trial court. In People v. Hartgraves, 31 Ill2d 375, at 378, 202 NE2d 33, where a contention was made that confessions had been obtained by physical and mental abuse and coercion and by a promise of leniency; that defendant was not permitted to make a telephone call during interrogation; and was not advised of his constitutional right to remain silent, the trial court determined these questions by conducting a preliminary hearing and held that the confessions were voluntary. On appeal such determination by a trial court will not be disturbed unless

204

manifestly against the weight of the evidence or unless the court has committed an abuse of discretion. The record discloses sufficient evidence from which the trial court in the instant case could have concluded that the confessions were voluntary. The procedure for determining whether or not a confession is voluntary was outlined in People v. Strayhorn, 35 Ill2d 41, 219 NE2d 517. In that case the court reiterated that the voluntary nature of a confession is largely within the discretion of the trial judge, and the court stated specifically (at page 46):

> ". . . it is only necessary for the prosecution to make a prima facie case and that the State was not required to produce all its evidence before any evidence is produced on behalf of the accused."

The court found no prejudicial error in the procedure adopted by the trial court in that case nor do we find any prejudicial error in the instant case. There was testimony of several officers present at the time of the confession and during questioning to the effect that defendant was not threatened or promised leniency with respect to his confession. There was very little evidence presented by defendant that he was threatened or that anything transpired which would in any manner affect the voluntary nature of the confession. With respect to the question of statements made by the officers to the defendant Purify, the facts in the record before us brings this case within the scope of People v. Joe, 31 Ill 2d 220, 201 NE2d 416, where the officer testified that he had advised defendant to tell the truth if he made a statement. Urging a defendant to tell the truth would not in any respect taint a confession. We, therefore, must conclude, on the basis of the record, that the trial court did not abuse its discretion in the instant case by finding

that the confession of defendant Purify was not the result of a promised leniency or in any manner involuntary.

■ The final question raised by defendant Purify was whether his constitutional right to due process of law was violated. It appears from the record that defendant was permitted to call an attorney the night of his arrest and that defendant requested a delay of his arraignment in order to obtain an attorney of his own choice. When he found he could not obtain an attorney, the court appointed an attorney for him. According to the testimony on behalf of the state, the officers informed defendant Purify of his rights when he was arrested. We, therefore, conclude that there was no violation of the principles established in Escobedo v. Illinois, 378 US 478. The Supreme Court of this State, in People v. Hartgraves, 31 Ill2d 375, at 380, 202 NE2d 33, in construing the effect of the Escobedo case had stated that the court did not read into the Escobedo case the requirement that a voluntary confession be rejected simply because the State did not "affirmatively caution the accused of his right to have an attorney and his right to remain silent." On the basis of the record before us, we must, therefore, find that defendant Purify was not deprived of his constitutional right to due process of law.

Since we find no reversible error in the record, the judgments of the Circuit Court of Will County with respect to defendants in this cause will be affirmed.

Affirmed.

STOUDER AND SCHEINEMAN, JJ., concur.